[Civ. No. 2021.    Third Appellate District.—November 7, 1919.]

## ABRAHAM ROSENBERG et al., Copartners, etc., Appellants, v. S. M. ROGERS, Respondent.

[1] CONTRACTS—SALE OF FIGS—RIGHT OF PURCHASER TO REJECT—LACK OF MUTUALITY.—Where the complete contract dealing with the purchase of an entire crop of figs is supported by mutual promises and by a money consideration, the presence therein of a clause giving the purchaser the privilege of rejecting such of the fruit as does not come up to the standard, or to take part or all of them, at the contract price, does not render the contract void for lack of mutuality.

[2] ID.—DUTY OF SELLER TO DELIVER ENTIRE CROP—DEFECTIVE CONDITION IMMATERIAL.—Under a contract for the purchase of an entire crop of figs grown upon a given place during a particular year, which, after fixing the standard, provides "that should any fruit tendered on this contract not conform with the above terms and conditions, it shall be optional with the buyer to reject the same, or take such fruit in, assort and weigh back at seller's expense and reject any portion of the lot not so conforming, without in either case relieving the seller from his obligation to deliver any other portion of the fruit herein contracted for," it is the duty of the seller to deliver all the figs grown, and if some are defective, give the purchaser the opportunity of deciding whether it will accept them and pay the agreed price for good figs, or reject a part or all of them not coming up to the standard. The fact that the figs are defective does not release the seller of her obligation to deliver all of them to the purchaser.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Reversed.

The facts are stated in the opinion of the court.

---

1. Mutuality of obligation where one party's obligation is not definite and certain, note, 1 L. R. A. (N. S.) 445.

Terry W. Ward for Appellants.

F. W. Henderson for Respondent.

ELLISON, P. J., *pro tem.*—On the twenty-ninth day of January, 1918, the parties hereto entered into a written contract for the sale of a crop of figs, the property of the defendant, to the plaintiff.

We quote from the contract the following paragraphs:

"In consideration of prices per lb. dried herein specified, Mrs. S. M. Rogers & McDonald Bros., sellers, has sold, and Rosenberg Bros. & Co., buyer, has bought the *entire crop* of figs stated herein grown during the current year on place known as Rogers Place, situate in Merced County, Cal., at prices and in quantities (estimated by seller) as follows:

| Quantity (Tons) | Variety | Price per lb. In cents. |
|---|---|---|
| 35 tons | W. Adriatic Figs | 8¾c |
| 200 lbs. | Culls, Birdpecks, etc. | 4c |

Sax furnished by buyer.

"Seller agrees properly to dry, bleach with sulphur on trays and cure *all of the crop* and to deliver the same thoroughly and properly dried, choice in quality, of good color, ungraded as to size, in original condition, without the addition of water, free from dark and defective figs and damage of every kind and in good merchantable condition at or f. o. b. cars Merced, California, and not later than the 25th day of Oct., 1918. . . .

"It is agreed that should any fruit tendered on this contract not conform with the above terms and conditions, it shall be optional with the buyer to reject same, or take such fruit in, assort and weigh back at seller's expense and reject any portion of the lot not so conforming, without in either case relieving the seller from his obligation to deliver any other portion of the fruit herein contracted for.

"Buyer may demand culls of each variety from said crop at a reduction of one cent per pound from the price above specified.

"Seller shall be released from his obligation to deliver any portion of the fruit herein contracted for, owing to its de-

struction by frost or other similar unavoidable casualty."
(Italics the writer's.)

During the season there was grown upon defendant's land
a total of 64,801 pounds of figs. Of this amount only
44,499 pounds were delivered to the plaintiff. The remain-
ing 20,302 were sold by the defendant to another party at
13½ cents per pound for eighteen thousand one hundred
pounds and 7 cents per pound for 2,202 pounds. After the
sale of the 20,302 pounds the plaintiff demanded possession
of the same from the defendant, and the figs not having been
delivered, brought this action for damages caused, as alleged,
by the defendant's failure to deliver the figs.

The cause was tried before a jury and the verdict was in
favor of the defendant. Judgment was entered accordingly
and from such judgment the plaintiff appeals.

It is set forth in defendant's answer that after the 44,499
pounds of figs were dried and delivered, heavy and destruc-
tive rains fell in Merced County and injured and destroyed
said 20,302 pounds of figs and made the same impossible to
properly dry, poor in quality, off color, dark and defective,
and not in good merchantable condition.

Paragraph II of the answer is as follows: "Defendant
alleges that subsequent and immediately following said rain-
fall defendant offered to deliver to plaintiff and plaintiff re-
quested instructions from them with reference to the delivery
thereof of said 20,302 pounds of figs; that plaintiff notified
said defendant that they would not accept said figs; that
they would take no figs that were mildewed or damaged by
rain. In this connection defendant alleges that practically
all of said 20,382 pounds of figs were mildewed and dam-
aged by rain, and that no portion of them measured up to
the requirements of said contract with reference to quality
and condition of figs to be delivered by defendant as here-
inbefore alleged and as in said complaint stated."

It is also alleged in the answer that because of the condi-
tion of the figs, in that they did not come up to the standard
of the contract, defendant was under no obligation to de-
liver them nor plaintiff to receive them.

The cause was tried by the court upon the theory that de-
fendant was under no obligation to deliver any figs that did
not measure up to the standard fixed by the contract, and
specifically was under no obligation to tender any figs that

were of poor quality, off color, dark and defective, and not in good merchantable condition.

In its instructions to the jury, the court emphasized this view of the case in the modification of certain instructions asked by the plaintiff and in giving certain instructions as asked by defendant. Thus, the plaintiff requested the following instruction: "The court instructs the jury that the burden was upon the defendant to establish each of said defenses by a preponderance of the evidence [you may believe from the evidence that said figs were to some extent damaged or mildewed by rain, or that they were poor in quality, dark and defective and not in good merchantable condition, or that they were impossible to properly dry, yet the court instructs you that none or all of said conditions of said figs in any wise excused defendant from delivering said figs to the plaintiff. Under the terms of said contract the only condition by which defendant could be released from his obligation to deliver to plaintiff said figs was the destruction thereof by frost or other similar unavoidable accident]. By the word 'destruction' is meant that which is destroyed, and a thing is destroyed when its value or usefulness is completely taken away.

"Unless you are convinced by a preponderance of the evidence that said 20,302 pounds of figs were entirely destroyed by frost or other similar unavoidable casualty, then I instruct you that it was the duty of defendant to deliver or tender delivery of said figs to the plaintiff *if they were of the kind and quality of figs required to be delivered by the terms of the contract.*"

The court modified the instruction by striking out all inclosed in brackets and by adding the part in italics, and, as thus modified, gave it to the jury.

In order to determine the correctness of the court's action in modifying this and other instructions, a brief reference to the terms of the contract is necessary, for by its terms are the rights and obligations of the parties fixed.

1. The contract states that the buyer (plaintiff) has bought the *entire* crop of figs on the Rogers' place.

2. Seller (defendant) agrees to dry, bleach with sulphur on tray, and cure *all* the crop and to deliver the *same* thoroughly and properly dried, choice in quality, of good color, ungraded as to size, in original condition without addition

of water, free from dark and defective figs and damage of every kind in good merchantable condition at f. o. b. cars, at Merced, California, not later than October 25, 1918.

3. It was agreed that should any figs tendered, not conforming to the above terms and condition, it shall be optional with plaintiff to reject same or take it in, assort and weigh back to seller, and reject any portion of the lot not so conforming.

The plaintiff bought the *entire crop* of figs at an agreed price. The defendant contracted to care for the crop, cure it and deliver it in good merchantable condition, as above defined.

But it was foreseen that all of the crop, when tendered, might not come up to the above standard. In that event, the option was given the buyer to reject such parts as did not conform to the standard or keep it all or such part as it desired and return the remainder to the defendant.

[1] Manifestly, in construing this provision of the contract, the court took the position that as the buyer was under no binding obligation to accept and pay for any defective figs, the seller was under no obligation to tender them; that as to this clause of the contract there was a lack of mutuality, by reason whereof it was not binding on either party. In thus holding there was error. The clause is only a part of an entire contract dealing with the entire crop of figs, supported by mutual promises and by a money consideration. The contract required defendant to cure the entire crop and deliver it all, good and defective, to the plaintiff. It left her no discretion in this regard. The privilege was given to the plaintiff, when figs were tendered, to reject those that did not come up to the standard, or to take part, or all of them, at the contract price.

This provision was inserted for the benefit of the buyer. When figs were ready for delivery, it was contemplated that the market might be such that the buyer could afford to accept defective figs and pay the contract price for them and he was given the right to do so. It was for the buyer to decide whether the figs were defective or not, and for it to decide what defective figs, if any, it would accept, but nowhere in the contract is there a word looking to the right of the seller to decide what figs she would or would not deliver. Her contract was to deliver them *all*—those

that came up to the standard fixed by the contract and those that did not.

This contract is binding upon her unless for some reason it is unenforceable. It is claimed that it merely gave the plaintiff an option to buy the defective figs; that it could not be compelled to do so, and, being unenforceable against it, it was not enforceable against the defendant; that it lacked mutuality. The entire contract, of which this paragraph is an important part, is supported by a consideration. It deals with the entire crop of figs and was founded upon the mutual promises of the parties and the money consideration agreed to be paid by the plaintiff.

An option given to one to buy either real or personal property, if supported by a consideration, is binding upon the party giving it. "If an offer to sell is supported by a sufficient consideration, it cannot be withdrawn prior to the time specified." (Elliott on Contracts, sec. 232.) "Quality of goods cannot, in absence of agreement to that effect, be determined by the judgment of one of the parties." (35 Cyc. 225.) "The purchaser has generally the right to an inspection and examination of the goods, in order to determine whether they are of the quality contracted for. It is the duty of the seller to afford opportunity for inspection, and if such opportunity is not afforded or inspection is prevented by the acts of the seller, there is no proper delivery in the performance of the contract." (35 Cyc. 225, 226.)

[2]  These reflections lead us to the conclusion that the case was tried and submitted to the jury upon an erroneous construction of the contract; that it was the duty of the defendant to deliver all the figs grown on her land during the season of 1918 to the plaintiff, and, if some were defective, give it the opportunity of deciding whether it would accept them and pay the agreed price for good figs, or reject a part or all of them, not coming up to the standard; that their defective condition did not release defendant from her written obligation to deliver *all* the figs to the plaintiff. It was perfectly competent for the parties to make such a contract and the general consideration of the contract supports all parts of it.

We are also of the opinion that the tendered instruction, above quoted, contains a clear and accurate statement of the rights and duties of the parties under the contract, and

should have been given to the jury without amendment or addition. The error in not giving the instruction, as presented, was not cured by any other instruction given, but, to the contrary, the same erroneous view of the case was carried into the other instructions.

The judgment is reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 5, 1920.

All the Justices concurred.